**VARIAN ASSOCIATES, Plaintiff,**

v.

**COUNTY OF SANTA CLARA, CALIFORNIA, Board of Supervisors of Santa Clara County, California, Defendants.**

Civ. No. 51522.

United States District Court,
N. D. California.
March 5, 1970.

Paul E. Anderson, San Francisco, Cal., John J. Cooper, William R. Moore, Los Angeles, Cal., for plaintiff.

William M. Siegel, County Counsel, Byron D. Athan, Deputy County Counsel, for defendants.

*Order Holding Case in Abeyance Pending Suit in State Courts*

GERALD S. LEVIN, District Judge.

Plaintiff taxpayer is aggrieved over the amount of taxes which the defendant County of Santa Clara assessed against tangible personal property for the fiscal years 1964/1965 and 1965/1966, and which it subsequently paid to the County. Plaintiff's complaint alleges that the taxes levied against it were determined by multiplying the tax rate set by the Board of Supervisors of the County of Santa Clara for each of the fiscal years in question by a proportion of the assessed value of plaintiff's personal property as determined by the Assessor of Santa Clara County. This proportion is known as an "assessment ratio." The complaint alleges that the Assessor assessed plaintiff's tangible personal property for each of the fiscal years in question by adopting an assessment ration of 33⅓ percent, whereas the Assessor assessed all other tangible personal property in the county by use of an assessment ratio which, on the average, was only 24.5 percent in the fiscal year 1964/1965 and 23.4 percent in the fiscal year 1965/1966. Plaintiff derives its information as to average assessment ratios in the County from figures published by the California State Board of Equalization, which plaintiff has appended to its complaint as Exhibits A and B.

The California Revenue and Taxation Code (Rev. & T.C.) §§ 1603 and 1607 required, in the past versions relevant to this case, that the plaintiff have filed with the Santa Clara Board of Supervisors (sitting as a Board of Equalization) an application for reduction of its 1964/65 assessment no later than the third Monday in July, 1964; and an application for reduction of its 1965/66 assessment no later than the third Monday of July, 1965. But the final lists of average assessment ratios for each county for the fiscal years 1964/65 and 1965/66 were not published by the State Board of Equalization until August 20, 1964, and August 19, 1965, respectively. Since the plaintiff had no right to in-

spect the preliminary tabulations of the Santa Clara average assessment ration made by the State Board of Equalization, Web Service Co. v. County of Los Angeles, 242 Cal.App.2d 1, 51 Cal.Rptr. 753, 760 (1966), plaintiff had no way of obtaining timely notice of its claimed disparate tax treatment. For this reason, plaintiff alleges, it did not file applications for assessment reductions for either the 1964/65 or 1965/66 fiscal years, since by the time it was able to learn of the county-wide assessment ratios for each of these periods, the time for filing the applications had lapsed.

Plaintiff filed a claim for tax refund with the Santa Clara Board of Supervisors on April 5, 1968, within the time prescribed by Rev. & T.C. § 5097. Plaintiff also requested the Board to sit as a Board of Equalization and retroactively hear plaintiff's application for 1964/65 and 1965/66 assessment reductions. A year later, on April 29, 1969, the Board at a hearing denied plaintiff's claim as to each of the fiscal years involved, on the grounds that plaintiff had failed to satisfy the requirement of initially filing timely applications for assessment reductions, and that the Board could not *nunc pro tunc* sit as a Board of Equalization to hear plaintiff's claims for assessment reductions. The Board suggested that plaintiff go to the California courts to get a determination of whether the Board could still hear plaintiff's refund claim despite the prior failure to file for an assessment reduction. It should be noted that under Rev. & T.C. § 5103, the deadline for plaintiff to file a suit against the defendants in a California Superior Court passed on October 29, 1969.

On June 12, 1969, plaintiff commenced the present suit in this court against the defendants Santa Clara County and the County Board of Supervisors, claiming that it was overassessed in each of the fiscal years 1964/65 and 1965/66, and that this constituted a violation of its rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. By way

of relief from this court, plaintiff seeks damages in amounts equal to the alleged overassessments. In the alternative, plaintiff asks this court to grant a mandatory injunction compelling the Santa Clara Board of Supervisors to telescope state administrative procedure by sitting as a Board of Equalization and treating plaintiff's claim for a refund as if it were an application for a reduction of assessments for the fiscal years in question.

The defendants have moved for a dismissal of the case on the ground that this court is barred from granting the relief sought herein by the Johnson Act, 28 U.S.C. § 1341, which provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

Defendants' motion to dismiss requires consideration of three questions: (1) whether the Johnson Act itself applies to bar the specific relief sought here by plaintiff, since the assessment, levy and collection of the challenged tax amounts have already occurred and plaintiff seeks, as one alternative form of relief, a refund in the form of damages; (2) if the Johnson Act does not apply to that aspect of plaintiff's plea which seeks damages, the question arises whether this court should still withhold relief, in accord with a policy customarily applied in federal courts where there is a plain, speedy, and adequate remedy in state courts; (3) whether there is a plain, speedy, and adequate remedy now available to plaintiff in the California courts, within the meaning of either the Johnson Act or the federal judicial policy noted in (2).

In regard to the first two questions, the leading case of Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), offers guidance. In *Great Lakes Co.* plaintiff sought to prevent the collection of his state taxes by obtaining a declaratory judgment in the federal district court to

the effect that the tax assessment violated the United States Constitution by interfering with the federal regulation of general maritime law. The Supreme Court observed that while the Johnson Act by its terms only barred district courts from *enjoining* the assessment or collection of state taxes, Congress did not thereby evince an intention to disapprove of the policy of federal courts, in the exercise of their equity jurisdiction, of declining jurisdiction as a matter of discretion when the state remedy for challenging taxes was plain, adequate, and complete. The Court then held that district courts, when asked to grant declaratory relief against the assessment and collection of state taxes, should be guided by the above policy, due to considerations expressed in *Great Lakes Co.* and in the earlier case of Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1931). The Court stated in Great Lakes Co., *supra,* 319 U.S. at 298, 63 S.Ct. at 1073:

> It is in the public interest that federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states.
>
> "The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it. * * *" (quoting Matthews v. Rodgers, *supra,* 284 U.S. at 525, 52 S. Ct. at 219.)

In *Matthews* the taxpayer sought to enjoin the collection of a state tax. In *Great Lakes Co.* the taxpayer sought a declaratory judgment invalidating a state tax *before* that tax had been collected, and such declaration would, of course, be tantamount to an injunction against the tax collection. Thus both *Matthews* and *Great Lakes Co.* can be distinguished from the instant case,

where the tax has already been paid, and hence the language just quoted from the above cases, reflecting judicial concern to avoid "needless obstruction" and "interference" with the "domestic policy" and "fiscal operations" of a state, is not necessarily relevant or determinative in the present case.

It should be noted, however, that there is a well established federal equity policy of abstaining from passing upon the constitutionality of state action when there is a possibility that review of such action by a state court, following the principles of state law, might render such federal scrutiny unnecessary. Spector Motor Service v. McLaughlin, 323 U.S. 101, 105–106, 65 S.Ct. 152, 89 L.Ed. 101 (1944). If this principle is applied in the present case, then we need not make the effort to apply the dictates of *Great Lakes Co.* and *Matthews* to our case. In determining whether the abstention doctrine is appropriate in this case, we resolve the third question posed earlier, namely, whether there is a remedy available to plaintiff in the California courts which would satisfy either the "plain, speedy, and efficient" criterion of the Johnson Act or the similar criterion established by the federal policy noted in *Great Lakes Co.* We find that the abstention doctrine should be applied to this case, and also that there is a sufficient likelihood that plaintiff has a remedy in the California courts.

In challenging defendants' motion to dismiss, plaintiff points out that in Hillsborough Township, Somerset County, New Jersey v. Cromwell, 326 U.S. 620, 625, 629, 66 S.Ct. 445, 90 L.Ed. 358 (1945), the Supreme Court elaborated on the adequate state remedy criterion discussed in *Great Lakes Co., supra,* and indicated that where the existence of the state remedy to protect the taxpayer's constitutional rights is uncertain and speculative, a district court may properly, in the exercise of its discretion, refuse to dismiss the suit. In this respect plaintiff refers us to several decisions of the California Supreme Court in which aggrieved taxpayers were held

barred from relief in California courts where they had failed to make the initial applications for assessment reduction before the particular Board of Supervisors sitting as a Board of Equalization. Dawson v. County of Los Angeles, 15 Cal.2d 77, 81, 98 P.2d 495 (1940); Luce v. City of San Diego, 198 Cal. 405, 406, 245 P. 196 (1926).

Certainly a strong argument can be made that plaintiff's prospects for an adequate remedy in the California courts now, leaving aside the problem of the bar of the relevant statute of limitations, are as uncertain and speculative as were the prospects facing the *Hillsborough* taxpayer in New Jersey courts. See Hillsborough, *supra,* 326 U.S. at 625, 66 S.Ct. 445. But there is no indication that the California taxpayers in the *Dawson* and *Luce* cases raised the fact of the "taxpayer dilemma", Ehrman & Flavin, Taxing California Property 43, created by the former statutory timetable in which the deadline for filing an assessment reduction application preceded the time during which a taxpayer could reasonably be expected to ascertain that he was being subjected to discriminatory tax treatment. And the fact that the California legislature remedied this situation in 1966, see Ehrman & Flavin, *op. cit.* 43–44, 412–413, might be used by a California court, applying equitable considerations, to relieve plaintiff from its owner version of the pre-1966 dilemma. This sanguine expectation deserves at least a chance.

It is true that the State statute of limitations applicable to plaintiff has run. And while this court cannot presume to decide whether the state courts should hold plaintiff barred from relief because of the running of the statute, cf. Henry v. Metropolitan Dade County, 329 F.2d 780, 781 (5th Cir.1964), it seems proper to mention those considerations which lead this court to believe that plaintiff's tardiness might be excused. First, plaintiff does not appear to have acted in bad faith in letting the limitations period run, since plaintiff's assumption that it had no possibility for adequate redress in California courts, in view of the *Dawson* and *Luce* decisions, was a reasonable assumption. Second, in considering whether or not the State statute of limitations should be applied, the California courts might determine that defendants suffered no harm by reason of plaintiff's delay in commencing suit there, since defendants have been apprised of the nature of the grievance, and the legal challenges underlying it, since at least June 12, 1969, when suit was brought in this court.

Accordingly, the suit in this court will be held in abeyance pending the outcome in the State courts, and after plaintiff has exhausted all avenues of relief available there. Should either a Superior Court or the appellate courts decide to excuse plaintiff's tardiness, but nevertheless withhold relief by applying the *Dawson* and *Luce* decisions, then this court will take up consideration of the constitutional aspects of this case. What this court will do if the State courts, including appellate courts, bar plaintiff from a hearing because of the running of the statute of limitations, will be left for decision upon the happening of such an eventuality. Compare Hillsborough Township, Somerset County, New Jersey v. Cromwell, 326 U. S. 620, 628, 66 S.Ct. 445, 90 L.Ed. 358 (1945), with Henry v. Metropolitan Dade County, 329 F.2d 780, 781 (1964).

It is so ordered.