Leonard Howard **MANDEL** individually and on behalf of all others similarly situated, Plaintiff,

v.

Donald J. **HUTCHINSON**, etc., et al., Defendants.

Civ. No. 71–2327.

United States District Court, C. D. California.

Dec. 21, 1971.

Irachmil B. Taus, II, Los Angeles, Cal., for plaintiff.

John D. Maharg, County Counsel of the County of Los Angeles, Dewitt W. Clinton, and Douglas V. Hart, Deputy County Counsels, Los Angeles, Cal., for defendants.

## DECISION AND ORDER DENYING REQUEST FOR THREE-JUDGE COURT AND DISMISSING COMPLAINT WITH PREJUDICE

HAUK, District Judge.

This matter arises upon the Complaint of Plaintiff on behalf of himself and all others similarly situated against the Assessors and Tax Collectors of each of the fifty-eight counties of the State of California. Plaintiff alleges that the residency requirements of Article XIII, Section $1\frac{1}{4}$ of the California Constitution violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, that it interferes with interstate commerce, and that it has a "chilling effect" on the right of veterans of other States to move to California.

Plaintiff alleges that he has fulfilled all conditions precedent to the exemption, except the residency requirements, and that he was denied the exemption solely because of this failure. Plaintiff seeks the convening of a three-judge court pursuant to 28 U.S.C. § 2284 to hear and determine the question of whether Article XIII, Section 1¼ [1] of the California Constitution taken in conjunction with California Rev. and Tax. Code, Section 205 (West 1970) [2] (which

1. "§ 1¼. *Exemptions; veterans*

Sec. 1¼. The (a) property to the amount of one thousand dollars ($1,000) of every resident of this State who has served in the Army, Navy, Marine Corps, Coast Guard or Revenue Marine (Revenue Cutter) Service of the United States (1) in time of war, or (2) in time of peace, in a campaign or expedition for service in which a medal has been issued by the Congress of the United States, and in either case has received an honorable discharge therefrom, or who after such service of the United States under such conditions has continued in such service, or who in time of war is in such service, or (3) who has been released from active duty because of disability resulting from such service in time of peace or under other honorable conditions, or lacking such amount of property in his own name, so much of the property of the wife of any such person as shall be necessary to equal said amount shall be exempt from taxation; provided, this exemption shall not apply to any person described in this subparagraph (a) owning property of the value of five thousand dollars ($5,000) or more, or where the wife of such person owns property of the value of five thousand dollars ($5,000) or more; and (b) property to the amount of one thousand dollars ($1,000) of the widow resident in this State, or if there be no such widow, of the widowed mother resident in this State, of every person who has so served and has died either during his term of service or after receiving an honorable discharge from said service, or who has been released from active duty because of disability resulting from such service in time of peace or under other honorable conditions shall be exempt from taxation; provided this exemption shall not apply to any widow described in this subparagraph (b) owning property of the value of ten thousand dollars ($10,000) or more, nor to any widowed mother described in this subparagraph (b) owning property of the value of five thousand dollars ($5,000) or more; and (c) property to the amount of one thousand dollars ($1,000) of pensioned widows, fathers, and mothers, resident in this State, of soldiers, sailors and marines who served in the Army, Navy, Marine Corps, Coast Guard or Revenue Marine (Revenue Cutter) Service of the United States shall be exempt from taxation; provided, this exemption shall not apply to any person described in this subparagraph (c) owning property of the value of five thousand dollars ($5,000) or more. (Amended Nov. 3, 1964.)

No exemption shall be made under the provisions of this section of the property of a person who is not legal resident of the State. No person described in this section who has served in the Army, Navy, Marine Corps, Coast Guard or Revenue Marine (Revenue Cutter) Service of the United States, nor a widow, father, or mother of such person, shall be eligible for an exemption as a result of such service, unless such person was a resident of California either or both (1) at the time of his entry into such service or (2) at the effective date of the amendment of this sentence as proposed at the 1963 Regular Session of the Legislature, except that a widow, father or mother who was eligible for the exemption at the effective date of said amendment of this sentence shall not lose his or her eligibility for the exemption as a result of that amendment. All real property owned by the Ladies of the Grand Army of the Republic and all property owned by the California Soldiers Widows Home Association shall be exempt from taxation. (Amended Nov. 2, 1954; Nov. 8, 1960; Nov. 3, 1964.)"

Cal. Const. art. 13, § 1¼

2. "§ 205. *Exemptions; veterans; wars and campaigns listed*

The veterans' exemption is as specified in Section 1¼ of Article XIII of the Constitution.

The following are wars under Section 1¼ of Article XIII of the Constitution:

(a) Revolutionary War, April 19, 1775–January 14, 1784.

(b) Second War With England, June 18, 1812–February 17, 1815.

(c) Black Hawk War, April 6, 1832–August 2, 1832.

(d) War With Mexico, April 24, 1846–May 30, 1848.

(e) Civil War, April 18, 1861–August 20, 1866.

defines and describes who is a veteran) is unconstitutional as applied.

Plaintiff claims Federal jurisdiction under 28 U.S.C. § 1343(3), (Civil Rights) and 28 U.S.C. § 2201 (Declaratory Judgment).

Plaintiff seeks to permanently enjoin the enforcement of the residency requirement by restraining the Assessors from denying the exemption to any veteran, and by enjoining the Tax Collectors from collecting the taxes due from that Class of veterans held non-exempt because of failure to meet the residency requirement. Plaintiff further seeks a tax refund for the Class equal to the dollar amount of the exemptions which have been denied veterans for non-residency since 1965.

Article XIII, Section 1¼ of the California Constitution exempts from taxation property up to the amount of $1,000 of veterans who own property valued at less than $5,000 and who were residents of California either at the time of entry into military service or on November 3, 1964, the date on which the residency requirement was added to the Constitution.

The Court originally heard the motion to convene the three-judge court and the request for interlocutory injunction on November 1, 1971. At that hearing the Court denied the motion for temporary restraining order and for an interlocutory injunction *pendente lite* and ordered the motion for a three-judge court continued to December 6, 1971, in order to enable the Los Angeles County Counsel to obtain authorization to represent the Assessors and Tax Collectors of the fifty-eight counties of California. Said authorization having been obtained and the Defendants having filed a Motion to Dismiss the Complaint and the Court having heard, considered and analyzed the arguments and having reviewed and considered all the pleadings filed herein, including the Complaint, the Application for Convening a Statutory Three-Judge

(f) War With Spain, April 21, 1898–April 11, 1899.

(g) War in Philippines, April 11, 1899–July 4, 1902.

(h) Chinese Relief Expedition, June 20, 1900–May 15, 1901.

(i) Campaign against the Rogue River, Yakima, Nez Percé, and Snake Indians in Oregon and Washington, 1855–1856.

(j) Campaign against the Indians in southern Oregon and Idaho and northern California and Nevada, 1865–1868.

(k) Campaign against the Cheyennes, Arapahoes, Kiowas, and Comanches in Kansas, Colorado, and Indian Territory, 1867–1869.

(*l*) Modoc War, 1872–1873.

(m) Campaign against the Apaches in Arizona, 1873.

(n) Campaign against the Kiowas, Comanches, and Cheyennes in Kansas, Colorado, Texas, Indian Territory, and New Mexico, 1874–1875.

(o) Campaign against the Northern Cheyennes and Sioux, 1876–1877.

(p) Nez Percé War, 1877.

(q) Bannock War, 1878.

(r) Campaign against the Northern Cheyennes, 1878–1879.

(s) Campaign against the Ute Indians in Colorado and Utah, September, 1879–November, 1880.

(t) Campaign against the Apache Indians in Arizona, 1885–1886.

(u) Campaign against the Sioux Indians in South Dakota, November, 1890–January, 1891.

(v) War With Germany-Austria, April 6, 1917–November 11, 1918.

(w) Campaign against the Apache Indians in Arizona, 1895–1896.

(x) World War II, December 7, 1941, to January 1, 1947.

(y) Campaign against the North Koreans and Chinese Communists in Korea, June 27, 1950, to January 31, 1955.

(z) Campaign against the Viet Cong and North Vietnamese Communists in South Vietnam, August 5, 1964, to a date to be fixed by proclamation of the Governor signifying the termination of this campaign.

The following are campaigns under Section 1¼ of Article XIII of the Constitution:

(a) First Nicaraguan campaign.

(b) Second Nicaraguan campaign.

(c) Yangtze River campaign in China.

(d) All other campaigns for service in which a medal has been issued by the Congress of the United States." 1970).

Cal.Rev. and Tax.Code § 205 (West

Court And For An Interlocutory Injunction, the Defendants' Statement and Supplemental Statement In Opposition thereto and also the Defendants' Motion to Dismiss, the Plaintiff's Memorandum of Opposition to said motion and the Defendants' Reply thereto, along with the respective points and authorities submitted by all parties, the Court now renders its Decision and Order denying the request for a three-judge court, and dismissing the Complaint with prejudice.

■ Initially, this Court must determine what criteria are to be used in deciding the question of whether or not a three-judge court should be convened. Recently we were presented with the identical query in a complaint requesting the convening of a three-judge court to determine the constitutionality of a Federal statute.[3] In that case we stated our intention of following the First Circuit's view of the District Judge's function when presented with a request for the convening of a three-judge court. That circuit, speaking through Chief Judge Aldrich in the case of Merced Rosa v. Herrero, 423 F.2d 591, 593 (1st Cir. 1970), held that "in determining whether a complaint alleges a case appropriate for a three-judge court the district judge performs a judicial, as distinguished from a ministerial function" and accordingly, he must ascertain whether the "request possesses a reasonable degree of legal merit." In determining whether the instant Complaint "possesses a reasonable degree of legal merit" we must be mindful of the "serious drain upon the federal judicial system" which the needless convening of a three-judge court can produce. Phillips v. United States, 312 U.S. 246, 250, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941).[4] Of course, the convocation of a three-judge court, in a situation where the Federal court typically abstains from exercising jurisdiction is a most inexcusable depletion of judicial energy and it would be foolhardy to advocate that the District Judge should, when confronted with this type of situation, still request the convening of this tri-partite bench. A fortiori, to request the convening of a three-judge court in a case lacking a basis for Federal jurisdiction is even more imprudent.

Consequently, the instant request for the convening of a three-judge court must be denied, as it is deficient for both of the aforestated reasons.

### 1. FEDERAL ABSTENTION

Recently the Supreme Court reiterated and reemphasized the import of certain fundamental tenets underlying our Federal system relative to Federal-State ju-

---

3. See California Teachers Association et al. v. Newport Mesa Unified School District et al., 333 F.Supp. 436 (C.D.Cal. 1971) for a discussion of the criteria used by different Circuits in determining whether a three-judge court should be convened. Parenthetically, we note that the case of Hargrave v. McKinney, 413 F.2d 320 (5th Cir. 1969) upon which the Plaintiff bases his argument that a three-judge court *must* be convened, was decided by the 5th Circuit. That Circuit employs a guideline for convening a three-judge court which has been rejected by other Circuits and which was found undesirable by this Court in California Teachers Association, *supra*.

4. As *Phillips* further pointed out, the statute authorizing a three-judge court is to be treated "not as a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such" 312 U.S. at 251, 61 S.Ct. at 483. And as Mr. Justice Frankfurter observed in Florida Lime and Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 92–93, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960) (dissenting opinion) quoted with approval by Mr. Justice Harlan in Swift and Co. v. Wickham, 382 U.S. 111, 128, 86 S.Ct. 258, 268, 15 L.Ed.2d 194 (1965) :

"[T]he convening of a three-judge trial court makes for dislocation of the normal structure and functioning of the lower federal courts . . . and direct review of District Court judgments by this Court not only expands this Court's obligatory jurisdiction but contradicts the dominant principle of having this Court review decisions only after they have gone through two judicial sieves."

dicial independence.[5] Mr. Justice Black speaking for the Court in the case of Younger v. Harris, 401 U.S. 37, 43, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) chronicles the Federal Court's long standing aversion to interference with the rightful independence of the States. Comparing a Congressional Act of 1793 which unconditionally provided "[N]or shall a writ of injunction be granted to stay proceedings in any court of a state" 1 Stat. 335, c. 22, § 5 with 28 U.S.C. § 2283, its present day successor, Mr. Justice Black graphically illustrates how few and minor have been the exceptions granted from the flat prohibitory language of the old Act. While admitting that the precise reasons for the long-standing public policy against Federal interference with State functions have never been specifically identified, Justice Black remarks that:

"[W]hat the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." Younger v. Harris, *supra*, at 44, 91 S.Ct. at 750.

Thus we see that Federal abstention is based on principles of comity. These principles require restraint when judicial interference with State taxation is sought. The leading case on Federal abstention from suits seeking to enjoin the collection of State taxes is Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932). In *Matthews* the Su-

preme Court reversed a judgment of a three-judge court enjoining the collection of a State tax on the privilege of buying and selling cotton. Abstention was based on 28 U.S.C. § 384, Jud.Code § 267[6] which declared that suits in equity could not be brought in Federal Courts in any case where a plain, adequate and complete remedy is afforded by State law. Mr. Justice Stone prescribed the policy for abstention in State tax cases when he said:

"The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it." Matthews v. Rodgers, *supra*, at 525, 52 S. Ct. at 219.

This withholding of relief is not a denial of jurisdiction but is, rather, a recognition by the Federal Court that they should stay their hand in the public interest when it reasonably appears that private interests will not suffer. As was reiterated by Mr. Justice Stone in deciding a case seeking declaratory relief against a State tax law alleged to be unconstitutional,

"[I]t is in the public interest that federal courts . . . exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states . . . . . Interference with state internal economy and administration is inseparable from assaults in the federal courts on the validity of

5. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781; Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).

6. 28 U.S.C. § 384, Jud.Code § 267 Rev. Stat. 723 (1877) merely perpetrated without material change the Judiciary Act of 1789, Sec. 16, 1 Stat. 82 which stated:
"And be it further enacted, That suits in equity shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law."

state taxation, and necessarily attends injunctions, interlocutory or final, restraining collection of state taxes." Great Lakes Dredge and Dock Co. et al., v. Huffman, 319 U.S. 293, 298, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943).

■ Far be it from this Court to waiver from this fundamental policy of the Federal judiciary, especially, as in this case, where the State has effectuated an adequate procedure for securing to the taxpayer the recovery of an illegally enacted tax. (See point 3 *infra*)

## 2. LACK OF JURISDICTION

The practice of Federal Courts in refraining from issuing injunctions against the collection of State taxes was recognized and mandated by Congress over three decades ago. By an Act of August 21, 1937,[7] Congress enacted the substance of what now provides that.

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (1948)

This section, commonly known as the Johnson Act, and its predecessor, 28 U.S.C. § 41(1), have been applied scores of times by Federal Courts, virtually without exception in favor of the State taxing authorities.[8]

---

7. Act of August 21, 1937, 50 Stat. 738, codified as 18 U.S.C. § 41(1), as amended 18 U.S.C. § 1341 (1948).

8. For example:

A suit against local assessors and tax collectors in six parishes seeking a declaration that assessments for ad valorem taxation on property consisting of intangible credits are unconstitutional, and asking that they be permanently erased from the tax rolls, is barred by 28 U.S.C. § 1341. Ford Motor Credit Company v. Louisiana Tax Commission, 440 F.2d 675 (5th Cir. 1971).

A suit against the Attorney General and others praying for the return of properties which a State court placed in receivership for nonpayment of sales taxes is barred by 28 U.S.C. § 1341. Pintozzi v. Scott, 436 F.2d 375 (7th Cir. 1971).

A suit seeking an injunction against the threatened sale of plaintiff's house for nonpayment of taxes and against the continued collection of taxes on the ground the assessment violated the due process and equal protection clauses of the Fourteenth Amendment, is barred by the Johnson Act. Kiker v. Hefner, 409 F.2d 1067 (5th Cir. 1969).

A suit seeking a declaration that a State's income tax is unconstitutional, and requesting an injunction against the same, is barred by 28 U.S.C. § 1341. American Commuters Association v. Levitt, 405 F.2d 1148 (2nd Cir. 1969); Gray v. Morgan, 371 F.2d 172 (7th Cir. 1966) cert. denied 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 596 (1967); Aronoff v. Franchise Tax Board of State of California, 348 F.2d 9 (9th Cir. 1965); West Publishing Co. v. McColgan, Franchise Tax Commissioner, State of California, 138 F.2d 320 (9th Cir. 1943).

A suit for declaratory judgment and injunction restraining the enforcement of sales and use taxes is barred by the Johnson Act. Charles R. Shepherd, Inc. v. Monaghan, 256 F.2d 882 (5th Cir. 1958).

The Johnson Act barred a suit against the State tax commission praying for a mandatory injunction to compel the commission to establish the actual cash value of all property in the State for ad valorem tax purposes, and to equalize assessments by fixing the percentage of the actual cash valuation upon which State ad valorem taxes are to be paid. Bussie v. Long, 383 F.2d 766 (5th Cir. 1968). See also: Pitts v. Kunsman, 363 F.2d 841 (3rd Cir. 1966); Henry v. Metropolitan Dade County, 329 F.2d 780 (5th Cir. 1964); Wyandotte Chemical Corp. v. City of Wyandotte, 321 F.2d 927 (6th Cir. 1963); Helmsley v. City of Detroit, 320 F.2d 476 (6th Cir. 1963); City of Orange Texas v. Levingston Shipbuilding Co., 258 F.2d 240 (5th Cir. 1958).

An action seeking declaratory relief from a bond indebtedness brought by landowners of territory in a school district upon which was annexed territory with outstanding bonded indebtedness which the voters of the school district had voted to assume was barred by 28 U.S.C. § 1341 because a judgment in favor of the plaintiffs would result in the avoidance of the State tax which was levied as a result of the debt assumption. Detroit Edison Co. v. East China Township School District No. 3, 378 F.2d 225 (6th Cir. 1967).

The federal district court does not have jurisdiction to entertain a declaratory

However, in addition to seeking injunctive relief, which is indisputably prohibited by the Johnson Act, Plaintiff requests declaratory relief in the form of a pronouncement by a three-judge court declaring the residency requirement of Article XIII, Section 1¼ void and unconstitutional.[9] Several years after the predecessor of the Johnson Act was implemented, an ingenious attempt was made to circumvent the prohibition of that section by requesting declaratory rather than injunctive relief. The United States Supreme Court found it unnecessary to determine whether the Johnson Act, which spoke only of suits "to enjoin, suspend, or restrain the assessment, levy, or collection of any tax" also barred a suit for declaratory relief, for the Court was "of the opinion that those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure." Great Lakes Dredge and Dock Co. v. Huffman, 319 U.S. 293, 299, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943) [10]

■ The Plaintiff also argues that since he seeks only to enjoin the enforcement of the residency requirement, he does not come within the ambit of the Johnson Act because the Court would not be required to restrain the assessment, levy or collection of any tax. The obvious answer to that assertion is that there is a direct relationship between the enforcement of the residency requirement and the amount of taxes collected. If the residency requirement falls, the number of allowable exemptions increases and the amount of tax revenue decreases. Any inclination to avoid application of the doctrine of 28 U.S.C. § 1341 by a severely restrictive interpretation is dispelled by a review of the innumerable cases in which the Federal Courts have refused to interfere in State tax procedures where an adequate remedy was available in the State courts.[11]

■ Plaintiff also seeks a tax refund equal to the dollar amount of the exemptions which have been denied veterans because of the residency requirement. The Plaintiff contends that a suit for refund does not fall within the prohibition of 28 U.S.C. § 1341, and therefore the Court does have jurisdiction. He cites as authority for that proposition Southland Mall Inc. v. Garner, 293 F. Supp. 1370 (D.C.Tenn.1968) and Varian Associates v. County of Santa Clara, 317 F.Supp. 888 (N.D.Cal.1970). However, both these cases are distinguishable from

judgment action to determine whether particular imports are subject to ad valorem taxation. City of Houston v. Standard-Triumph Motor Co., 347 F.2d 194 (5th Cir. 1965). An action to restrain a city from levying an assessment upon property to build sanitary and storm sewers is barred by 28 U.S.C. § 1341. Carson v. City of Fort Lauderdale, 293 F.2d 337 (5th Cir. 1961). A suit to enjoin enforcement of an ad valorem possessory interest tax on land leased by plaintiff is prohibited by the Johnson Act. Harsh California Corporation v. County of San Bernardino, 262 F.2d 626 (9th Cir. 1958). This Congressional mandate has also been cited as barring a suit to restrain enforcement of a State poll tax, Michael v. Cockerell, 161 F.2d 163 (4th Cir. 1947); a suit to require a board of assessors to specifically perform an agreement to abate taxes, Lawrence Print Works, Inc. v. Lynch, 146 F.2d 996 (1st Cir. 1945); and a suit by a city in one

State against the corporations commissioner of another State for a declaration of tax assessability of a bridge. Miller v. City of Greenville, 138 F.2d 712 (9th Cir. 1943).

9. Plaintiff argues, in the alternative, that Article XIII, section 1¼ is unconstitutional in toto as applied to Plaintiff and the Class and requests declaratory relief asserting such.

10. Also see the following for suits where declaratory relief has been denied on the basis of 28 U.S.C. § 1341: Ford Motor Credit Company v. Louisiana Tax Commission, 440 F.2d 675 (5th Cir. 1971); American Commuters Association v. Levitt, 405 F.2d 1148 (2nd Cir. 1969); Gray v. Morgan, 371 F.2d 172 (7th Cir. 1966); City of Houston v. Standard-Triumph Motor Co., 347 F.2d 194 (5th Cir. 1965); Charles R. Shepherd, Inc. v. Monaghan, 256 F.2d 882 (5th Cir. 1958).

11. See cases cited notes 8 and 10, *supra*.

the case at bar. In the *Southland* case the sole basis of the suit was a request for refund; since there was no adequate State remedy, the Court accepted jurisdiction, stating that 28 U.S.C. § 1341 would not apply. Southland Mall, *supra* 293 F.Supp. at 1371. That situation can easily be distinguished from the instant case in which not only is there a plain, speedy and adequate State remedy, but it is also obvious that the request for a refund is only an insignificant portion of the Complaint, the gravamen of which is a request to enjoin the further denial of the allegedly unconstitutional tax exemption.

In the *Varian* case, a Federal Court in this District was confronted with a suit for the refund of taxes which were allegedly assessed in a manner violative of the complaining taxpayer's rights under the Equal Protection Clause of the Fourteenth Amendment. The defendants moved for a dismissal on the grounds that the refund suit was prohibited by 28 U.S.C. § 1341. However, the Court found that it was not necessary to apply that statute and held the suit in abeyance since "the abstention doctrine should be applied to this case, and also [since] there is a sufficient likelihood that plaintiff has a remedy in the California courts." Varian Associates, *supra* 317 F.Supp. at 891.

Moreover, to hold that a complaint essentially seeking injunctive relief which also includes a comparatively insignificant claim for refund, automatically lifts the prohibition of Section 1341, would thwart the Congressional intent evident in that Section, as well as stultify the uniform holdings in the case law which were incorporated in its enactment. Here, the claim for refund is subordinate to the Plaintiff's claim that the State has and will continue to impose unconstitutional conditions to its tax exemptions. Assuming, arguendo, that there is merit in this claim, Plaintiff cannot receive a full and complete vindication of his rights unless an injunction is issued. Yet, under the Johnson Act this injunction can only be granted in the State courts. For the Federal Court to accept jurisdiction over this ancillary claim for refund would frustrate the philosophy of undertaking only those cases in which the Court can give comprehensive relief, and would tend to generate a multiplicity of actions as well as a duplicity of work.[12]

### 3. PLAIN, SPEEDY AND EFFICIENT STATE REMEDY

Plaintiff's final argument is that he does not have a plain, speedy and efficient remedy in the California courts to challenge the constitutionality of the residency requirement. There is absolutely no merit in this contention, since there are at least three courses in California open to the Plaintiff to remedy the allegedly unconstitutional tax.

*First*, the tax may be paid under protest, a suit may be commenced to recover the same, and interest will be allowed. Cal.Rev. and Tax.Code, Sections 5136, 5138, 5141 (West 1970) [13] This proce-

---

12. The United States Courts of Appeal for the Fifth and Seventh Circuits have affirmed District Court dismissals on the basis of 28 U.S.C. § 1341 in cases where, as here, a request for refund was included as ancillary to a suit for injunctive relief. See Kiker v. Hefner, 409 F.2d 1067 (5th Cir. 1969); Gray v. Morgan, 371 F.2d 172 (7th Cir. 1966).

13. "§ 5136. *Payment under protest; right; nature*
   After taxes are payable, any property owner may pay the taxes on his property under protest. A payment under protest is not a voluntary payment."

Cal.Rev. & Tax Code § 5136 (West 1970).
"§ 5138. *Action; right; limitation; parties; jurisdiction; Joinder; defense counsel*
   Within six months after the payment, an action may be brought against a county or a city in the superior court to recover the taxes paid under protest.
   No such action hereafter commenced shall be further prosecuted, and no further proceedings shall be had therein, and all such actions hereafter commenced must be dismissed by the court in which the same shall have been commenced, on its own motion, or on the motion of any defendant therein unless the summons shall have

dure may be used to obtain a judgment declaring that a tax exemption must be allowed and requiring a refund of the illegally collected tax. City of Long Beach v. Board of Supervisors of Los Angeles County, 50 Cal.2d 674, 328 P.2d 964 (1958).

*Secondly*, the Board of Supervisors may refund taxes erroneously or illegally collected if a claim for refund of the same is filed within three years of the date of payment. Cal.Rev. and Tax.Code, Sections 5096, 5097 (West 1970) [14] If the Board of Supervisors denies the claim, the taxpayer may sue for a refund and collect interest. Cal.Rev. and Tax. Code, Sections 5103, 5105 (West 1970) [15] In the case of Harsh California Corpora-

---

been issued and served and the return thereon made within one year after the commencement of said action, except where the parties have filed a stipulation in writing that the time may be extended.

If all or any portion of the taxes paid under protest and sought to be recovered were collected by officers of the county for a city, an action must be brought against the city for the recovery of such taxes and judgment must be sought against the city. Where actions are brought against both a county and a city such actions may be joined in one complaint.

Any city for which county officers collect taxes may provide for the defense by counsel for the county of actions brought against the city under this article, in which event it shall be the duty of such counsel to defend such actions, or the city may provide that such actions shall be defended by its own counsel."

Cal.Rev. & Tax Code § 5138 (West 1970)

"§ 5141. *Actions; judgment; interest, rate*

If the court finds that the assessment complained of is void in whole or in part, it shall render judgment for the plaintiff for the amount of the taxes paid on so much of the assessment as is found to be void. In such event but only where taxes are paid after the effective date of this act, the plaintiff is entitled to interest on the taxes for which recovery is allowed at a rate per centum per annum equal to the rate per centum per annum that the defendant has received, through investment or by bank deposit, on the amount allowed and recovered as taxes from the date of payment under protest to the date of entry of judgment, and such accrued interest shall be included in the judgment. The taxes paid on so much of the assessment as is not found to be void shall constitute valid taxes which, if paid after delinquency, shall carry penalties, interests and costs."

Cal.Rev. & Tax Code § 5141 (West 1970)

14. "§ 5096. *Order of supervisors; grounds*
On order of the board of supervisors, any taxes paid before or after delinquency shall be refunded if they were:
(a) Paid more than once.
(b) Erroneously or illegally collected.
(c) Paid on an assessment in excess of the ratio of assessed value to the cash value of the property as provided in Section 401 by reason of the assessor's clerical error or excessive or improper assessments attributable to erroneous property information supplied by assessee.
(d) Paid on an assessment of improvements when the improvements did not exist on the lien date.
(e) Paid on an assessment in excess of the equalized value of the property as determined pursuant to Section 1611 or Section 1760 by the county board of equalization."

Cal.Rev. & Tax Code § 5096 (West 1970)

"§ 5097. *Claim; verification; filing time*

No order for a refund under this article shall be made except on a claim:
(a) Verified by the person who paid the tax, his guardian, executor, or administrator.
(b) Filed within three years after making of the payment sought to be refunded or within one year after the mailing of notice as prescribed in Section 2635, whichever is later.

An application for a reduction in an assessment filed pursuant to Section 1607 or Section 1760 shall also constitute a sufficient claim for refund under this section if the applicant states in the application that the application is intended to constitute a claim for refund. If the applicant does not so state, he may thereafter and within the period provided in subdivision (b) file a separate claim for refund of taxes extended on the assessment which applicant applied to have reduced pursuant to Section 1607 or Section 1760."

Cal.Rev. & Tax Code § 5097 (West 1970)

15. "§ 5103. *Actions; parties; statute of limitations; jurisdictions; joinder; defense counsel*

If the board of supervisors or city council rejects a claim for refund in whole or in part, the person who paid the taxes,

tion v. County of San Bernardino, 262 F.2d 626, 629–630 (9th Cir. 1958) the Ninth Circuit Court of Appeals stated that this particular refund procedure (Cal.Rev. and Tax.Code, Sections 5096 et seq.) is a plain, speedy and efficient State remedy as contemplated under 28 U.S.C. § 1341. This procedure is available to Plaintiff and has been utilized by a taxpayer who alleged that he was wrongfully deprived of the veteran's exemption under Article XIII, Section 1¼ of the California Constitution. Sherman v. Quinn, 31 Cal.2d 661, 192 P.2d 17 (1948)

*Thirdly*, in California a taxpayer is entitled to a writ of mandate if there is no adequate remedy in the ordinary course of law. Cal.Code of Civ.Proc., Section 1086 (West 1955) [16] Thus, if for some reason, neither of the above men-

tioned remedies is available to the Plaintiff, he may still seek relief in the State through a writ of mandate. The California Supreme Court granted mandamus to a taxpayer who claimed that the county assessor denied her a veterans exemption under Article XIII, Section 1¼ on the ground the exemption was not available to women. The Court suggested that a writ of mandate might be appropriate because of the large group of individuals in the petitioner's class. Lockhart v. Wolden, 17 Cal.2d 628, 111 P.2d 319 (1948)

### 4. CONCLUSION

Cognizant of the guidelines under which a three-judge court may be convened, being especially wary of convening this unusual court in a situation where the court lacks jurisdiction or has

---

his guardian, executor, or administrator may within six months after such rejection commence an action in the superior court against the county or a city to recover the taxes which the board of supervisors or the city council have refused to refund.

If an applicant for reduction of an assessment states in the application that the application is intended to constitute a claim for refund pursuant to Section 5097, said claim for refund shall be deemed denied on the date of the final installment of the taxes extended on such assessment bcome delinquent.

No such action hereafter commenced shall be further prosecuted, and no further proceedings shall be had therein, and all such actions hereafter commenced must be dismissed by the court in which the same shall have been commenced, on its own motion, or on the motion of any defendant therein unless the summons shall have been issued and served and the return thereon made within one year after the commencement of said action, except where the parties have filed a stipulation in writing that the time may be extended.

If all or any portion of the taxes sought to be recovered were collected by officers of the county for a city, an action must be brought against the city for the recovery of such taxes and judgment must be sought against the city. Where actions are brought against both a county and a city such actions may be joined in one complaint.

Any city for which county officers collect taxes may provide for the defense by counsel for the county of actions brought against the city under this article, in which event it shall be the duty of such counsel to defend such actions, or the city may provide that such actions shall be defended by its own counsel."
Cal.Rev. & Tax Code § 5103 (West 1970)
"§ 5105. *Actions; interest, right, rate*

In any action in which the recovery of taxes is allowed by the court, the plaintiff is entitled to interest on the taxes for which recovery is allowed at a rate per centum per annum equal to the rate per centum per annum that the defendant has received, through investment or by bank deposit, on the amount allowed and recovered as taxes from the date of the filing of the claim for refund to the date of entry of judgment, and such accrued interest shall be included in the judgment. This section shall not apply to taxes paid before the effective date of this act."
Cal.Rev. & Tax Code § 5105 (West 1970)

16. "§ 1086. *Circumstances authorizing issuance; petition*

The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested." Cal.Code of Civ.Pro. § 1086 (West 1955)

historically abstained, and assured that an adequate State remedy is available, the Court is convinced that it should take no action herein except to deny Plaintiff's request for a three-judge court and application. for a temporary restraining order and for preliminary injunction *pendente lite*, and to grant Defendants' motion to dismiss, all in accordance with the foregoing decision which shall constitute findings of fact and conclusions of law as required by Rule 52, F.R.Civ.P.