**Percy BLAND et al., Plaintiffs-Appellants,**

v.

**Robert McHANN et al., Defendants-Appellees.**

**No. 30429.**

United States Court of Appeals, Fifth Circuit.

June 29, 1972.

Rehearing and Rehearing En Banc Denied Sept. 1, 1972.

Frank R. Parker, Lawyers' Comm. for Civil Rights Under Law, George P. Taylor, Jackson, Miss., for plaintiffs-appellants.

Roger Landrum, W. Scott Welch, Jackson, Miss., for defendants-appellees; Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., of counsel.

Before GEWIN, AINSWORTH and ALDISERT,* Circuit Judges.

GEWIN, Circuit Judge:

In the summer and fall of 1966 Negroes in Edwards, Mississippi engaged in peaceful protests against local merchants and municipal officials because of alleged racial discrimination. In October and November of 1966 the Mayor of Edwards and the Board of Aldermen met to approve the municipal land assessment; the assessment rolls were approved in mid-November. Town records show that the assessed values of 237 lots owned by Negroes in 1966 were increased on the assessment roll, while 39 lots owned by Negroes were not increased. In contrast, the assessed values of 34 lots owned by white people were increased, while 166 lots were not increased. The assessed value of one lot owned by a white person was decreased, apparently because of the removal of a building.[1]

The complaint in this case was filed by Negro property owners (taxpayers) in Edwards charging that the 1966 increases in property tax assessments of Negroes were solely the result of racial discrimination and were in retaliation for the prior demonstrations.[2] The action was brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343 against the municipal officials of Edwards.[3] The case was tried without a jury.

During the course of the trial a statistician-urban sociologist testified on behalf of the taxpayers that the difference in percentages of the black increases and white increases could not be due to change. He stated that the probability was less than 1 time in 100,000 that such a difference would occur by chance or by a random system of assessment increases.

The district court denied all relief. The court wholly rejected the statistical evidence and found that no evidence of discrimination had been presented. The court further found that the property owners had a *"perfectly expeditious and valid remedy in the state court,"* (emphasis added) and that *none of the plaintiffs had made any effort to avail themselves of that remedy.* Although we agree with the district court that the taxpayers cannot prevail in this action, we do so for reasons in part different from those given by the district court. We therefore affirm in part and in part vacate the judgment of the district court.

In its findings of fact and conclusions of law the district court stated, "The plaintiffs are not entitled to any injunctive relief against this municipality on

---

* Hon. Ruggero J. Aldisert, of the Third Circuit, sitting by designation.

1. The parties stipulated and the district court found that in 1965 all lots owned by Negroes were assessed at a total valuation of $250,300, while in 1966 the same lots, without any improvements in many cases, were increased by $131,800 or 52.6%. The 1965 assessment for all lots owned by whites was $461,100. In 1966 the net white assessment was increased by $15,500 or 3.4%.

2. Taxpayers' complaint requested a preliminary and permanent injunction restraining Edwards' officials from increasing real property assessments on the basis of race, and a preliminary and permanent injunction enjoining the town officials from "levying, assessing and collecting any real property ad valorem taxes based on assessments which fail to assess the real property of the plaintiffs and their class in a constitutional and a racially non-discriminatory fashion." Taxpayers also sought a money judgment amounting to a full return plus interest of previously collected ad valorem taxes which were alleged to be unconstitutionally and discriminatorily assessed.

3. The defendants included the Tax Assessor and Collector, the members of the Board of Aldermen, the town clerk and the Mayor of the town of Edwards.

their assessment of ad valorem taxes for any of the years in suit." The footnote to that statement is to 28 U.S.C. § 1341:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The remainder of the court's opinion appears to deal largely with the merits of the case, although in the final paragraph of the opinion the court concluded that taxpayers had an adequate state remedy. Thus, while the court based its decision in part on § 1341, it also reached the merits and concluded that taxpayers had simply not proved their case. Although it was not inappropriate for the district court to conduct a full and complete hearing, we do not think the court should have reached the merits of the case.[4]

■ We are convinced that both long-standing judicial policy and congressional restriction of federal jurisdiction in cases involving state tax administration make it the duty of federal courts to withhold relief when a state legislature has provided an adequate scheme whereby a taxpayer may maintain a suit to challenge a state tax. The taxpayer may assert his federal rights in the state courts and secure a review by the Supreme Court.

■ It is well established that § 1341 is an explicit congressional limitation on the jurisdiction of the federal courts in cases which would enjoin, suspend or restrain state tax levy, assessment or collection.[5] Taxpayers seek to circumvent § 1341 by arguing that relief under § 1983 is supplemental and is not limited to any requirement of exhaustion of state remedies. We do not disagree with the general rule that exhaustion is not required in § 1983 cases; however, in this case § 1983 collides full force with a specific congressional limitation on federal jurisdiction. In such circumstances we are convinced that § 1341 must prevail.

The Second Circuit has squarely confronted and resolved this clash. In American Commuters Ass'n v. Levitt,[6] the court totally rejected the claim that § 1983 somehow provided an exception to the clear limitations of § 1341:

> [C]onsidering the special attention courts have always shown to tax matters even when constitutional rights are involved . . ., plus the unequivocal congressional statement set forth in § 1341, we conclude that when there are adequate state remedies available, § 1341 means what it so plainly says and that federal jurisdiction is still precluded by it.[7]

It is difficult to gain complete insight into the problem from other prior decisions because of the prevailing idea that

4. See note 34 infra.

5. Ford Motor Credit Co. v. La. Tax Comm'n, 440 F.2d 675 (5th Cir. 1971); Kiker v. Hefner, 409 F.2d 1067 (5th Cir. 1969); City of Houston v. Standard Triumph Motor Co., 347 F.2d 194 (5th Cir. 1965); Henry v. Metropolitan Dade County, 329 F.2d 780 (5th Cir. 1964); see Hillsborough Township v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946); cf. Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932).

6. 405 F.2d 1148 (2d Cir. 1969).

7. Id. at 1151. See Hickmann v. Wujick, 333 F.Supp. 1221 (E.D.N.Y.1971). In Pintozzi v. Scott, 436 F.2d 375 (7th Cir. 1970) the complaint was brought under 42 U.S.C. §§ 1981, 1983 seeking injunctive relief in a suit involving state tax assessment and collection. The district court held the action was barred by 28 U.S.C. § 1341 and that the civil rights statutes protect personal rights rather than property rights. The Seventh Circuit upheld the § 1341 bar but left the conflict between § 1983 and § 1341 unresolved:

> "Without deciding the validity of plaintiffs' legal theory, we hold plaintiffs were not denied substantial constitutional rights such as to justify federal intervention in the state court proceedings."

Id. at 378.

§ 1983 and 28 U.S.C. § 1343, its jurisdictional counterpart, applied only to actions involving personal rather than property rights. Because of this distinction, courts generally have held § 1983 inapplicable to state tax actions, but then have proceeded to conclude that § 1341 constituted a bar to the action.[8]

The personal versus property rights argument has now been laid to rest. In Lynch v. Household Finance Corp.,[9] decided this term, the Supreme Court held that § 1983 applies to deprivations of both personal and property rights.

> This Court has never adopted the distinction between personal liberties and proprietary rights as a guide to the contours of § 1343(3) jurisdiction. Today we expressly reject that distinction.[10]

In reaching that conclusion the Court clarified the proper relationship between § 1983 and § 1341. In footnote 6 to the preceding quotation the Court, noting that various cases had been cited by the respondents in support of the "personal rights distinction," stated:

> All of these cases involved constitutional challenges to the collection of state taxes. Congress has treated judicial interference with the enforcement of state tax laws as a subject governed by unique considerations and has restricted federal jurisdiction accordingly. . . . [11]

Thereafter the Court quoted § 1341 and went on to say:

We have repeatedly barred anticipatory federal adjudication of the validity of state tax laws. Dows v. City of Chicago, 11 Wall. 108, [20 L.Ed. 65]; Matthews v. Rodgers, 284 U.S. 521, [52 S.Ct. 217, 76 L.Ed. 447]; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293 [63 S.Ct. 1070, 87 L.Ed. 1407]; see also Perez v. Ledesma, 401 U.S. 82, 126–127, n. 17 [91 S.Ct. 674, 27 L.Ed.2d 697–698, 701] (opinion of Brennan, J.). The decisions cited by respondents may, therefore, be seen as consistent with congressional restriction of federal jurisdiction in this special class of cases, and with longstanding judicial policy.[12]

We are in full accord with the Second Circuit's result in *Levitt* and any doubts we might have had have been completely eradicated by the Supreme Court's explicit elimination in *Lynch* of the personal versus property rights distinction.

■ Taxpayers argue alternatively that even if § 1341 is applicable to their requests for anticipatory relief it does not preclude their action for a refund. Such a contention has been accepted by several district courts,[13] and focusing solely on the language of the statute the argument is compelling; but there is more.

We begin by noting that this court has already held § 1341 applicable to bar relief under a complaint which sought a refund as well as anticipatory relief. Kiker v. Hefner.[14] The Seventh Circuit did likewise in Gray v. Morgan.[15] How-

---

8. *See* Bussie v. Long, 383 F.2d 766 (5th Cir. 1967); Gray v. Morgan, 371 F.2d 172 (7th Cir. 1966), cert. denied, 386 U.S. 1033, 87 S.Ct. 1484, 18 L.Ed.2d 596 (1967); Jones v. Township, 331 F. Supp. 1281 (D.C.N.J.1971); Hornbeak v. Hamm, 283 F.Supp. 549 (M.D.Ala.1968), aff'd per curiam, 393 U.S. 9, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968); Abernathy v. Carpenter, 208 F.Supp. 793 (W.D.Mo. 1962), aff'd per curiam, 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963).

9. 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed. 2d 424 (1972).

10. *Id.* 92 S.Ct. at 1117, at 429.

11. *Id.* 92 S.Ct. at 1117, at 429 n. 6.

12. *Id.*

13. Southland Mall, Inc. v. Garner, 293 F. Supp. 1370 (W.D.Tenn.1968); Rico Argentine Mining Co. v. Board of County Com'rs, 215 F.Supp. 208 (D.Colo.1963); Central Steel & Wire Co. v. City of Detroit, 101 F.Supp. 470 (E.D.Mich.1951); Central Steel & Wire Co. v. City of Detroit, 99 F.Supp. 639 (E.D.Mich.1951).

14. 409 F.2d 1067 (5th Cir. 1969).

15. 371 F.2d 172 (7th Cir. 1966), *accord*, Nat'l Gas Pipeline Co. v. Sergeant, 337 F.Supp. 88 (D. Kansas 1972).

ever, in neither of those cases was any explanation given for the inclusion of an action for a refund within the prohibition of § 1341. Thus, while *Kiker* would appear to effectively preclude taxpayer's action, we give further consideration to the question because we think that even apart from the statute, sound judicial policy precludes consideration of the action by this court.

Prior to the passage of § 1341 the Supreme Court had announced a policy of judicial restraint in matters of state tax administration. In First National Bank v. Board of County Commissioners,[16] the Court was faced with an action to recover the amount of certain state taxes. Taxpayer alleged the shares of its bank and other banks in the same county had been assessed upon a valuation grossly in excess of the value of shares in other banks in other counties of the state. The district court dismissed the action after sustaining a demurrer to the complaint. Reversal of that judgment was sought in the Supreme Court on the ground that "the taxes were assessed and collected in contravention of the due process and equal protection clauses of the Fourteenth Amendment. . . ." After discussing the adequacy of the state remedy the Court affirmed the judgment of the district court holding that it was precluded from reaching the merits of the complaint because taxpayers had not availed themselves of an adequate state remedy. This case alone would seem to effectively preclude the action here for a refund if the state remedy is adequate.

In a later case, decided prior to the enactment of § 1341, the Court refused to enjoin the collection of state taxes, even though constitutional claims of invalidity were made where the state remedy was plain, adequate and complete. Matthews v. Rodgers.[17] In *Rodgers* the Court gave two reasons for exercising such restraint:

> The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.[18]

Congress recognized and gave sanction to the judicial practice by the enactment of the predecessor to § 1341.[19] Soon thereafter the Supreme Court was faced with an action for a declaratory judgment that a state tax was unconstitutional. Great Lakes Dredge & Dock Co. v. Huffman.[20] Acknowledging that the statute did not expressly include declaratory relief, the Court concluded that it was unnecessary to inquire whether it could be so construed. Instead, the Court relied upon the principles expressed in Matthews v. Rodgers in concluding that where the state remedy is plain, adequate and complete it is the duty of federal courts to withhold declaratory relief, and to remit the taxpayers to the state courts with ultimate review in the Supreme Court.[21]

16. 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1924).

17. 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932).

18. *Id.* at 525, 52 S.Ct. at 219, 76 L.Ed. at 452.

19. Act of August 21, 1937, 50 Stat. 738, 28 U.S.C.A. § 41(1).

20. 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943).

21. More recently in Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701, 710 (1971) (concurring in part and dissenting in part), Justice Brennan gave a cogent statement of the reasons underlying the nonintervention of the federal courts in state tax matters. Justice Brennan's comments were made during the course of his effort to illustrate that Great Lakes Dredge and Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943) relied upon by the majority in Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), equated declaratory and injunctive relief not because of principles of federalism but be-

First National Bank v. Board of County Commissioners, *supra,* clearly would leave taxpayers to their state remedy, if it is plain, adequate and complete. The cases involving anticipatory relief further expound upon the idea that in matters involving state tax law state remedies must be pursued where they are plain, adequate and complete. An action for a refund is an integral part of state tax administration. We

see no reason to bifurcate the state remedy. Section 1341 compels the taxpayers to seek anticipatory relief through a plain, speedy and efficient state remedy. An ancillary claim for a refund should properly be joined with it.[22]

Thus, based upon all of the foregoing we conclude that it is the duty of federal courts, in actions for the refund of state taxes, to defer to state administrative

---

cause of the peculiar needs of tax administration:

The special reasons justifying the policy of federal non-intervention with state tax collection are obvious. The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administrators might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts. See generally, S.Rep.No. 1035, 75th Cong., 1st Sess. (1937). These considerations make clear that the underlying policy of the anti-tax-injunction statute, 28 U.S.C. § 1341, relied on in Great Lakes, bars all anticipatory federal adjudication in this field, not merely federal injunctions.

401 U.S. at 127 n. 17, 91 S.Ct. at 698, 27 L.Ed.2d at 730 n. 17.

Taxpayers' argument that § 1341 is limited to state tax problems involving citizens of the state and foreign corporations is not borne out by the decisions of the Supreme Court. It is true that this court in Hargrave v. McKinney, 413 F.2d 320, 325 (5th Cir. 1969), did describe a twofold legislative purpose for § 1341 which referred only to such controversies; however, this court has applied the statute to litigation involving citizens

of the same state. Kiker v. Hefner, 409 F.2d 1067 (5th Cir. 1969). As we pointed out in *Hargrave,* the significant distinction there was that plaintiffs sought not to enjoin, restrain or suspend the collection of a state tax but instead to require the collection of additional taxes, 413 F.2d at 326. In doing so we recognized a broader purpose of § 1341: "To protect the integrity of the state treasury." *Id.* Upon remand of *Hargrave* to a three judge court, Hargrave v. Kirk, 313 F. Supp. 944, 947 (M.D.Fla.1970), the court held § 1341 inapplicable because "the plaintiffs in the instant case are not attempting to strike down an assessment . . . but, on the contrary, are attempting to obtain the right to have such a scheme." In Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971) the Supreme Court vacated the judgment of the three judge court and held that the district court should have abstained where there was pending in the state courts a claim which if sustained would "obviate the necessity of determining the Fourteenth Amendment question." The decision was based upon principles of abstention and not § 1341.

22. One district court has reasoned similarly. In Mandel v. Hutchinson, 336 F.Supp. 772, 779–780 (C.D.Cal.1971), as here the refund claim was ancillary to the taxpayer's primary claim of continuing unconstitutional action. The court reasoned that since injunctive relief could be granted only in the state courts because of § 1341, for the court to accept jurisdiction over an ancillary claim for a refund would "frustrate the philosophy of undertaking only those cases in which the Court can give comprehensive relief, and would tend to generate a multiplicity of actions as well as a duplicity of work."

Another district court avoided deciding whether § 1341 applied to an action for a refund by applying principles of abstention. Varian Assoc. v. County of Santa Clara, Calif., 317 F.Supp. 888, 889 (N.D.Cal.1970).

and judicial remedies where the state remedy is "plain, speedy and efficient."

██ Having decided that § 1341 is applicable and that the action for a refund is precluded where the state remedy is adequate the crucial question becomes whether the Mississippi remedy is in fact adequate, i. e. "plain, speedy and efficient." [23] Taxpayers have alleged numerous shortcomings in the Mississippi remedy which they claim render it inadequate.[24] They summarize their attack on the Mississippi remedy by assailing it as "too costly and too uncertain to provide the 'plain, speedy and efficient remedy' called for by § 1341."

Taxpayers have made no effort to distinguish Charles R. Shepherd, Inc. v. Monaghan [25] in which this court held "it is quite plain that the matter involved is a tax and that under the Johnson Act the federal court has no jurisdiction to restrain its collection where, *as here, an adequate remedy is provided for the recovery back if improperly collected.*" [26] (emphasis added). The complaint sought declaratory and injunctive relief against alleged illegal *Mississippi* taxes.

Upon our own review of the Mississippi remedy, we reaffirm *Monaghan.*

The Mississippi Constitution requires that taxation be uniform and equal throughout the state and that property be taxed in proportion to its value.[27] The Mississippi assessment scheme provides for notice that the rolls have been equalized,[28] a means for the hearing of the objections of taxpayers,[29] and for an appeal to the circuit court where the issue is tried de novo.[30] Another statute provides for an appeal as a matter of right to the Mississippi Supreme Court.[31] In addition, § 1340 of the Mississippi Code permits one or more taxpayers to enjoin the collection of any taxes "levied or attempted to be collected without authority of law." [32]

Although the district court did consider this case on its merits, it also found that "These plaintiffs have a perfectly expeditious and valid remedy in the state court to assure the fact that their property is fairly and equally assessed under the requirements of our state constitution according to its fair and reasonable market value." That finding by

---

23. In a recent three judge case in Alabama the court was asked to declare Alabama's ad valorem tax program unconstitutional. Prior to reaching the merits of the action the court rejected defendants claim that 28 U.S.C. § 1341 barred the action. The court found that the "Alabama courts do not afford plaintiffs a plain, speedy and efficient remedy." Weissinger v. Boswell, 330 F.Supp. 615, 618 n. 4 (M.D.Ala.1971).

24. Taxpayers' objections to the Mississippi remedy are:
    1. The Mississippi procedure does not permit a class action and would require a multiplicity of suits.
    2. Mississippi law does not permit an injunction against racial discrimination in property tax assessments.
    3. Mississippi law places a 10% penalty on unsuccessful appellants from a contest of a tax assessment which is an unconstitutional chill on the right to appeal.
    4. The Mississippi statute unconstitutionally places the penalty solely upon an arbitrary class.

    5. There is no provision for suspension of the tax while it is being tested in court.
    6. Mississippi law makes no provision for the recovery of interest on illegally assessed taxes.
    7. The Mississippi remedy, as applied here, did not give adequate notice to taxpayers to allow them to protest and as a practical matter it is not available.

25. 256 F.2d 882 (5th Cir. 1958).

26. *Id.* at 884; *see* Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932) where the Supreme Court held the Mississippi remedy adequate.

27. Miss.Const. Art. 4, § 112.

28. Miss.Code Tit. 16, § 3742–12.

29. Miss.Code Tit. § 3742–14.

30. Miss.Code Tit. 16, § 3742–17.

31. Miss.Code Tit. 10, § 1147.

32. Miss.Code Tit. 10, § 1340.

a district judge sitting in Mississippi merits significant weight; certainly it is not clearly erroneous.[33]

▮ Taxpayers' complaints that the Mississippi remedy is inadequate appear in reality to be an argument that a *better* remedy would be available in the federal courts. Neither the judicial decisions nor § 1341 requires that the state remedy be the best remedy available or even equal to or better than the remedy which might be available in the federal courts. Section 1341 merely requires that the state remedy be "plain, speedy and efficient." Thus, in view of the district court's finding, this court's decision in *Monaghan*, and our own independent review of the available state remedy, we conclude that the Mississippi remedy is plain, speedy and efficient.

The district court decided this case on the merits. As our opinion indicates we think that was inappropriate. Thus, to the extent that the district court relied on § 1341 we affirm; to the extent that it went beyond that issue and decided the merits we vacate the judgment.[34] The Mississippi remedy, as we understand it, contemplates that the taxpayers' claims may be pursued to the state supreme court. Final rejection there would permit review by the United States Supreme Court. That is the appropriate procedure to pursue.[35]

Affirmed in part and vacated in part.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.

33. *See generally* Hillsborough Township v. Cromwell, 326 U.S. 620, 630, 66 S.Ct. 445, 90 L.Ed. 358, 366 (1946); Huddleston v. Dwyer, 322 U.S. 232, 237, 64 S. Ct. 1015, 88 L.Ed. 1246, 1249 (1944); City National Bank v. United States, 383 F.2d 341, 342 (5th Cir. 1967); Freeman v. Continental Gin Co., 381 F.2d 459, 466 (5th Cir. 1967).

34. We intend no criticism of the action taken by the district court. The court observed that the complaint was probably vulnerable to a motion to dismiss but proceeded to a full hearing "because the nature of the charge in general was so serious in such a delicate area of proper

constitutional government that the court decided to hear it." The court further observed that the motion to dismiss was overruled "out of an abundance of precaution on account of the nature of the claim, and the possibility that something may have developed from the evidence to give rise to a claim here."

35. *See* Great Lakes Dredge and Dock Co. v. Huffman, 319 U.S. 293, 300–301, 63 S.Ct. 1070, 87 L.Ed. 1407–1412 (1943); Ford Motor Credit Co. v. La. Tax Comm'n, 440 F.2d 675, 676 (5th Cir. 1971); Gray v. Morgan, 371 F.2d 172, 174 (7th Cir. 1966).