Anise JENKINS, et al., Plaintiffs,

v.

**WASHINGTON CONVENTION CENTER, et al., Defendants.**

**No. Civ.A. 98–2404(CKK).**

United States District Court, District of Columbia.

Aug. 12, 1999.

Daniel M. Schember, Alisa A. Wilkins, Gaffney & Schember, P.C., Washington, DC, for plaintiffs.

Glenn M. Young, Mark D. Poindexter, Richard J. Wickham, Jr., Squire, Sanders & Dempsey L.L.P., Washington, DC, Frederick A. Douglas, Curtis A. Boykin, Leftwich & Douglas, Washington, DC, Mark D. Back, Assistant Corporation Counsel, DC, Washington, DC, for defendants.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

This case arises out of a dispute about the propriety of a taxation scheme in the District of Columbia enacted in order to finance the building of a new convention center in the District. Anise Jenkins and numerous other named plaintiffs who paid the contested sales and use tax, as well as Planet Vox, Inc., a business incorporated in the District, bring this suit against the Washington Convention Center Authority and the District of Columbia seeking return of their money or damages. Plaintiffs contend that, during certain specified months, the Mayor of the District of Columbia collected the tax pursuant to an expired tax law, thereby engaging in an *ultra vires* act, depriving them of property without due process, taking their private property for public use without just compensation, and effecting a conversion. Pending before this Court are the Defendants' Motions to Dismiss and for Judgment on the Pleadings. For the reasons set forth below, the Court concludes that it lacks subject matter jurisdiction to hear Plaintiffs' claim, and therefore grants the Defendants' Motion to Dismiss.

## I. BACKGROUND

Since September 28, 1994, the District of Columbia has collected sales and use taxes

pursuant to the Washington Convention Center Authority ("WCCA") Act of 1994, D.C.Law 10–188 §§ 301–303 (1994) ("the 1994 Act"). Compl. ¶ 16. Section 206(h) of the 1994 Act required that the board of the WCCA "submit final financial requirements and a feasibility analysis for the construction of the New Convention Center to the Mayor and Council within 24 months of the effective date of this act." *Id.* According to § 306(a) of the 1994 Act, "Sections 301, 302 and 303 shall expire two years after the effective date of the act if the Board does not submit final financial requirements and a feasibility analysis to the Mayor and the Council as provided by section 206(h)." *Id.* Under the 1994 Act, the authority for the District to collect the convention center tax therefore would have expired on September 28, 1996, the 24–month anniversary of the effective date of the 1994 Act. The authority did not submit a report to the mayor or District Council on or before this date. *See* Compl. ¶ 2.

In the weeks preceding this deadline, and in the months that followed it, the District sought and passed emergency legislation in order to delay the deadline for WCCA's submission of its financial report.[1] The District Control Board passed two emergency acts in all; finally, in June 1998, it enacted new legislation repealing the provision of the 1994 Act that called for the expiration of taxing authority. Plaintiffs challenge several aspects of this legislation, including the legitimacy of the Second Emergency Act and the effective date of the repeal.

Plaintiffs have asserted two claims against Defendants under District law. *See* Compl. ¶¶ 72, 75. Plaintiffs first allege that Defendants' collection of Plaintiffs' money under claim of entitlement pursuant to the 1994 Act was *ultra vires* —that the Mayor and his subordinates had no

power to collect taxes without legislative authority. *See* Compl. ¶ 72. Plaintiffs also suggest that the taking of the tax moneys for the convention center amounted to conversion under District law. Compl. ¶ 75.

Plaintiffs raise two related claims under 42 U.S.C. § 1983. *See* Compl. ¶¶ 73–74. First, Plaintiffs contend that the taking of their money under this taxation scheme by District officials in the absence of proper legislative authority violated their constitutional rights by depriving them of property without the legislative process to which they were due. Compl. ¶ 73. In addition, Plaintiffs suggest that Defendants are liable to them under 42 U.S.C. § 1983 for taking their property without just compensation in violation of the takings clause of the Fifth Amendment. Compl. ¶ 74.

Defendant WCCA moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(2), and for judgment on the record pursuant to Fed.R.Civ.P. 12(c); Defendant District of Columbia joined in these motions. *See* Defendants' Joint Reply in Further Support of Their Motions to Dismiss and for Judgment on the Pleadings. The Defendants predicate their Motion to Dismiss, in relevant part, on the Federal Tax Injunction Act, 28 U.S.C. § 1341 ("FTIA"), as well as on a similar provision of the District of Columbia Code, the District of Columbia Tax Injunction Act, D.C.Code § 47–3307 ("DCTIA").

## II. DISCUSSION

■ In deciding whether subject matter jurisdiction exists in the instant case, the Court looks first to the scope and application of the Federal Tax Injunction Act, a statute that aims to insulate state tax administration from unwarranted federal intervention. This 1937 statute provides

---

1. The Court recognizes that the facts alleged in this case, in particular the chronology of the successive Emergency Acts and the repeal of the original expiration provision, are far more complex than this brief summary would convey. Since the Court finds, however, that

Plaintiffs have failed to demonstrate the subject matter jurisdiction required to litigate their claims in this forum, it is unnecessary to elaborate upon these allegations with the detail their full exposition would require.

that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Congress fashioned the FTIA to codify common law principles of comity and federalism in the domain of taxation. *See Fair Assessment in Real Estate Ass'n, Inc., v. McNary*, 454 U.S. 100, 102, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). In *McNary*, a taxpayers' association challenged the property tax assessment practices in St. Louis County, Missouri. *See id.* at 105–106, 102 S.Ct. 177. The Supreme Court commented upon the serious effects posed by federal court intervention into disputes over state taxes, noting that "[i]t is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Id., citing Dows v. City of Chicago*, 11 Wall. 108, 78 U.S. 108, 20 L.Ed. 65 (1870). Since nothing in the FTIA or its judicial construction directly addresses the application of the Act to the District of Columbia, the Court must decide if this Act or its District of Columbia counterpart (the District of Columbia Tax Injunction Act) precludes federal jurisdiction on the substance of Plaintiffs' claims against the District.

## A. Does the Federal Tax Injunction Act apply to the District of Columbia?

### 1. The District as a local sovereign

■ The threshold question before the Court in this regard is whether or not the District of Columbia falls within the purview of the category "State" as it operates in the FTIA. Although no settled law exists on precisely this question, cases addressing legislation with a similar ambit suggest that the FTIA does apply to the District. The Supreme Court has held that whether the District "constitutes a 'State or Territory' within the meaning of any particular statutory or constitutional provision depends upon the character and aim of the specific provision involved." *District of Columbia v. Carter*, 409 U.S. 418, 420, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), *reh'g denied*, 410 U.S. 959, 93 S.Ct. 1411, 35 L.Ed.2d 694 (1973). In *Carter*, the Court evaluated the status of the District under 42 U.S.C. § 1983; it enumerated several factors to consider in determining whether the District is a state or territory for the purposes of a statutory provision, including "the words themselves ... the context, the purposes of the law, and the circumstances under which the words were employed." *Id.* at 420, 93 S.Ct. 602, citing *Puerto Rico v. Shell Co. (P.R.), Ltd.*, 302 U.S. 253, 258, 58 S.Ct. 167, 82 L.Ed. 235 (1937). As an illustration of this analysis, the Court pointed to the fair housing standards of 42 U.S.C. § 1982, observing that "it would be anomalous indeed if Congress chose to carve out the District of Columbia as the sole exception to an act of otherwise universal application." *Id.* Indeed, the Court continued, "this is all the more true where, as here, the legislative purposes underlying [the law] support its applicability in the District." *Id.*

In addition, courts have generally indicated that the District of Columbia resembles a state within the framework of a comity analysis. *See Silverman v. Barry*, 727 F.2d 1121, 1123, n. 4 (D.C.Cir.1984) (assuming, "as this court has on other occasions ... that the abstention rules apply in the District with the same force as they do where a state sovereign is involved."). *Cf. Shook v. District of Columbia Fin. Responsibility & Management Assistance Auth.*, 132 F.3d 775, 776 (D.C.Cir.1998) (comparing the District Charter created under the Home Rule Act "in certain respects to a state constitution."). Congress itself drew an explicit parallel between the jurisdictional balance of federal and local courts in the District of Columbia and the one more generally envisioned by our federalist system. As the

District gained a local venue to supplement the federal one already in operation, Congress declared:

> Upon completion of the three stages of transfer of jurisdiction the United States District Court for the District of Columbia will be on a par with other United States District Courts, exercising federal jurisdiction only, and the Superior Court of the District of Columbia will have all purely local jurisdiction.
>
> The jurisdictional changes will result in a Federal–State court system in the District of Columbia analogous to the court systems in the several States.

H.R.Rep. 91–907, at 34–35 (1970), cited in *United States Jaycees v. Superior Court of the District of Columbia et al.*, 491 F.Supp. 579, 582 (1980). Congress's description here suggests that the constraints on federal jurisdiction embodied in the FTIA weigh as heavily upon this Court as upon any other federal district court in the United States.

Other circuit and territorial courts have held, moreover, that the word "State" in the FTIA should be construed broadly. *See McCaw v. Fase*, 216 F.2d 698, 699 (9th Cir.1955); *35 Acres Assocs. v. Adams*, 962 F.Supp. 687, 690 (D.Vi.1997). In *McCaw*, for example, the Ninth Circuit found that the FTIA applied to the Territory of Hawaii. *See McCaw*, 216 F.2d at 699. The *McCaw* court commented that the federal courts' deference in allowing "the state or Territorial courts to examine the validity or invalidity of their tax statutes ... is but an expression of the interrelationship of two sovereigns under our Federal system of government." *Id.* In *35 Acres Associates*, a court declined to exercise jurisdiction over a dispute regarding taxes promulgated by the U.S. Virgin Islands. *35 Acres Associates*, 962 F.Supp. at 690. Noting that its jurisdiction paralleled that of a district court, the territorial court found that "[n]either side has suggested that the Government of the Virgin Islands does not possess sufficient attributes of the sovereignty of a State to require the appli-

cation of the principles of comity and federalism underlying the Tax Injunction Act." *Id.* Because the wisdom of preventing the federal judiciary from interfering with state tax schemes pertains as strongly to the District as it does to states or territories, this Court finds that the FTIA does apply to cases involving District taxes.

## 2. The District of Columbia Tax Injunction Act

As a local analogue to the FTIA, Congress also enacted legislation governing tax collection in the District that included, in an amendment to the original act, a specific provision insulating this tax scheme and its attendant appeals board ("Board of Tax Appeals") from suits at law. *See District of Columbia Revenue Act of 1937*, 50 Stat. 692, ch. 690; *District of Columbia Revenue Act of 1937, Amendments*, 52 Stat. 356 (1938), especially title IX, 52 Stat. at 370. This provision was then codified in 1973 as the District of Columbia Tax Injunction Act, D.C.Code § 47–3307 ("DCTIA"). ("No suit shall be filed to enjoin the assessment or collection by the District of Columbia or any of its officers, agents, or employees of any tax."). The existence of the DCTIA bolsters the Court's conclusion that it must refrain from considering the merits of this challenge to the District of Columbia taxation scheme, since this act provides an additional bar to the exercise of jurisdiction here.

Like the FTIA, the DCTIA and its 1938 predecessor codified the common law principle that suits such as the one currently before the Court cannot be challenged judicially without the prior exhaustion of administrative remedies—and then only in D.C. Superior Court. The D.C. Court of Appeals has held that,

> [u]nder [§ 47–2410, the precursor to the DCTIA], the recovery of refunds through *appeal* to the Superior Court requires, as a first step, a complaint to [the statutorily established administrative body]. Subject matter jurisdiction

of the Superior Court does not attach until that prerequisite has been satisfied, and a refund based on a final determination of the Superior Court presupposes that the taxpayer has complied with the procedure mandated by the legislature.

District of Columbia v. Keyes, 362 A.2d 729, 732–33 (D.C.1976), cert. denied, 430 U.S. 968, 97 S.Ct. 1651, 52 L.Ed.2d 360 (1977) (emphasis added).[2] Read together, the two Tax Injunction Acts suggest that Congress and the District of Columbia Council both intended to preserve the local administrative tax remedies as the first and essential step for challenges to District taxation schemes.

## B. The scope of non-intervention

■ The FTIA states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Two aspects of this statute bear reflection in any consideration of its applicability: the nature of relief sought, and the adequacy of the local remedy available.

### 1. The nature of the relief sought

■ While the statute explicitly prohibits federal courts from hearing cases that seek to "enjoin, suspend or restrain" a state tax when an adequate state remedy is available, those forms of relief do not constitute an exhaustive list of claims over which the district courts must decline jurisdiction. See McNary, 454 U.S. at 110, 102 S.Ct. 177 ("[N]either the legislative history of the Act nor that of its precursor . . . suggests that Congress intended that federal-court deference in state tax matters be limited to the actions enumerated in those sections.").

Consistent with the McNary court's holding that the FTIA should not be read as barring only those challenges to state or municipal tax laws involving actions to "enjoin, suspend or restrain" state taxes, other district and circuit courts have applied the FTIA to bar cases involving demands for tax refunds. See Bland v. McHann, 463 F.2d 21, 27–28 (5th Cir.1972), cert. denied, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973). In Bland, a group of African–American taxpayers challenged the municipal land tax assessment of Edwards, Mississippi. Id. at 23. The Bland court wrote "we conclude that it is the duty of federal courts, in actions for the refund of state taxes, to defer to state administrative and judicial remedies where the state remedy is 'plain, speedy and efficient.' " Id. at 27–28. As justification for their holding, the Bland court found that "[a]n action for a refund is an integral part of state tax administration. We see no reason to bifurcate the state remedy." Id. at 27.

Courts have applied the FTIA in cases like the one before this Court in which plaintiffs sought a tax refund in the form of compensatory damages. See Todd v. Johnson, 718 F.Supp. 1305, 1308 (S.D.Miss.1989); Compl. ¶ 79. In Todd, a military retiree challenged Mississippi's taxation of his federal retirement benefits. Id. at 1306. The Todd court found that "the fact that Plaintiff seeks the legal remedy of damages in the form of a refund does not avoid application of equitable principles mandating the [dismissal of] this case." Id. at 1308. In support of this conclusion, the Todd court noted that "Congress [in codifying the FTIA] did not thereby evince an intention to disapprove of the policy of federal courts, in the exercise of their equity jurisdiction, of declin-

---

2. Moreover, the Keyes court remarked that the reluctance of courts to award refunds and damages in cases such as the one before this Court stems in part from a recognition that such awards produce a rather paradoxical result: "Where class action tax refunds for fiscal years in the past are at issue, the relief sought would not emanate from some inexhaustible treasury. The reality is that the funds could only be supplied by an additional tax on innocent taxpayers." Id. at 737.

ing jurisdiction as a matter of discretion when the state remedy for challenging taxes was plain, adequate and complete." *Id.,* citing *Great Lakes Dredge and Dock Co. v. Huffman,* 319 U.S. 293, 299, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943).

The Supreme Court has also applied the FTIA to bar claims alleging that a tax was illegal or even unconstitutional. *See Great Lakes,* 319 U.S. at 298, 63 S.Ct. 1070. In that case, an employer challenged the imposition of taxes to fund Louisiana's unemployment insurance fund. *Id.* at 294–95, 63 S.Ct. 1070. The *Great Lakes* Court wrote that "[w]henever the question has been presented, this Court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States." *Id.* at 298, 63 S.Ct. 1070. This is especially so "where the state, acting within its constitutional authority, has set up its own adequate procedure for securing to the taxpayer the recovery of an illegally exacted tax." *See id.*

**2. The sufficiency of the remedy available**

▇ Any state law remedy that allows a taxpayer to challenge a tax due or already collected, and to press any constitutional claims she may have, constitutes a "plain, speedy and efficient remedy." *See Todd,* 718 F.Supp. at 1308, citing *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 513, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). The Supreme Court has also described an acceptable state law remedy as one where "it appears that the state legislature has provided that on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back." *See Great Lakes,* 319 U.S. at 301, 63 S.Ct. 1070. Moreover, other circuits have held that when the federal courts

determine whether or not they may exercise jurisdiction over a state tax law challenge, "[n]either the judicial decisions nor § 1341 requires that the state remedy be the best remedy available or even equal to or better than the remedy which might be available in the federal courts." *Bland,* 463 F.2d at 29.

It seems manifest given the foregoing analysis that the District of Columbia affords an adequate remedy to taxpayers seeking a refund for allegedly illegally collected taxes; indeed, the instant case presents no dispute on this issue. Pursuant to the D.C.Code § 47–2020(a), "[a]ny tax that has been erroneously or illegally collected shall be refunded if application under oath is filed with the Mayor for such refund within 3 years from the payment thereof...." Section 47–3306 further provides that "[a]ny sum finally determined by the Superior Court to have been erroneously paid by or collected from the taxpayer shall be refunded by the District to the taxpayer from its annual appropriation for refunding erroneously paid taxes in said District."[3] Because the various District provisions supply an administrative remedy as well as the right to a judicial challenge, taxpayers who, like Plaintiffs, seek a refund of an allegedly illegal tax must pursue these remedies before this Court can entertain their claim.

To the extent § 1341 precludes recourse to a federal forum in most challenges to state and local taxation schemes, it appears to conflict with other statutory provisions guaranteeing, in certain cases seeking to vindicate federal rights, immediate access to the federal courts. The discussion below addresses this apparent conflict in cases such as the one before this Court.

**C. Reconciling § 1983 and § 1341**

▇ Two claims before the Court arise under 42 U.S.C. § 1983, which gener-

---

**3.** Other sections of the D.C.Code that support this conclusion include § 47–1812.11(a)(2) ("Every claim for credit or refund must be in writing, under oath ...,") and § 47–1815.1 ("any person aggrieved by the denial of any claim for refund made under the provisions of § 47–1812.11 may, within 6 months from the date of the ... denial of a claim for refund ... appeal to the Superior Court of the District of Columbia....").

ally does not obligate a plaintiff to exhaust all other possible remedies before seeking one in federal court. *See, e.g., McNary,* 454 U.S. at 104, 102 S.Ct. 177 (stating that "[§ 1983] made no mention of any requirement that state remedies be exhausted before resort to the federal courts could be had under 28 U.S.C. § 1343.... [Section] 1983 was held to authorize immediate resort to a federal court whenever state actions allegedly infringed constitutional rights."). When the plaintiff is challenging the constitutionality of a state tax, however, this exception to the general doctrine of exhaustion ceases to apply. *See id.* at 115–16, 102 S.Ct. 177. The Supreme Court has spoken decisively on this issue, asserting that, "[t]hough federal courts are obliged to hear § 1983 claims, it is clear that they may not award damages or declaratory or injunctive relief in state tax cases when an adequate state remedy exists." *Nat'l Private Truck Council, Inc., et al. v. Oklahoma Tax Comm'n, et al.,* 515 U.S. 582, 588, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995).

Other courts have found similarly that § 1341 effectively trumps § 1983 in cases where the two statutes appear to conflict. In a § 1983 action charging race discrimination in a local tax scheme, the Fifth Circuit held that the FTIA precluded federal jurisdiction. *See Bland v. McHann,* 463 F.2d at 21. The *Bland* court announced: "We are convinced that both longstanding judicial policy and congressional restriction of federal jurisdiction in cases involving state tax administration make it the duty of federal courts to withhold relief when a state legislature has

provided an adequate scheme whereby a taxpayer may maintain a suit to challenge a state tax." *Id.* at 24. In unequivocal terms, the Fifth Circuit concluded that, "when there are adequate state remedies available, § 1341 means what it so plainly says and that federal jurisdiction is still precluded by it." *Id., note omitted; accord Evangelical Catholic Communion, Inc. v. Thomas,* 373 F.Supp. 1342, 1343 (D.Vt.1973), *aff'd,* 493 F.2d 1397 (2nd Cir. 1974) (stating that "[t]he rule allowing civil rights actions to be maintained under 42 U.S.C. § 1983 without the prior exhaustion of state judicial remedies does not constitute an exception to the exhaustion requirement of the Tax Injunction Act.").[4] In the case before this Court, Plaintiffs' invocation of § 1983 does not obviate the fact that their claims amount to an action for a tax refund, one necessarily governed by the FTIA.[5]

## D. Narrow exceptions to the bar against federal jurisdiction

■ Notwithstanding the foregoing discussion, however, § 1341 does not prohibit the exercise of federal jurisdiction in every case. Federal district courts may, for example, exercise their equity jurisdiction and hear tax cases in which plaintiffs seek injunctive or declaratory relief if to do so would avoid a "multiplicity of suits." *See National Private Truck Council, Inc.,* 515 U.S. at 591, 115 S.Ct. 2351 (1995). In *National Private Truck Council,* a class of plaintiffs alleged that Oklahoma's taxes on certain out-of-state vehicles violated the "dormant" Commerce Clause.[6] *See id.* at

---

4. Other courts have made similar findings in applying the requirements of the FTIA to constitutional challenges seeking damages in lieu of tax refunds. *See, e.g., National Private Truck Council,* 515 U.S. at 589, 115 S.Ct. 2351 (stating that "§ 1983 does not permit federal courts to award damages in *state tax cases when state law provides an adequate remedy.");* accord Kelly v. Springett, 527 F.2d 1090, 1093 (9th Cir.1975) (stating that "[a]lthough prosecuted under the shield of a 42 U.S.C. § 1983 Civil Rights action, the appellant's demand for judgment for [a sum],

seized under the jeopardy assessment of the California Franchise Tax Board is nothing less than a claim for a tax refund.").

5. In particular, plaintiffs seek a refund with interest of taxes already paid, or in the alternative, compensatory damages in an amount identical to the taxes already paid plus interest. Compl. ¶ 79.

6. Like the case presently before this Court, this challenge to the Oklahoma tax was brought under 42 U.S.C. § 1983. *National*

583–84, 115 S.Ct. 2351. After restating the broad reading generally given to the FTIA, the Supreme Court noted that "there may be extraordinary circumstances under which injunctive or declaratory relief is available even when a legal remedy exists...." *Id.* at 591, n. 6, 115 S.Ct. 2351. Equity jurisdiction may attach in the rare case where, for example, "the 'enforcement of the tax would lead to a multiplicity of law suits, or produce irreparable injury....'" *Id.,* citing *Dows,* 20 L.Ed. at 65. The Court specified, though, that "the multiplicity-of-suits rationale for permitting equitable relief extends only to those situations where there is a real risk of 'numerous suits between the same parties, involving the same issues of law and fact.'" *National Private Truck Council,* 515 U.S. at 591, n. 6, 115 S.Ct. 2351, citing *Matthews v. Rodgers,* 284 U.S. 521, 529–30, 52 S.Ct. 217, 76 L.Ed. 447 (1932). To the extent this risk entails a showing of damages on the part of numerous parties, and therefore a protracted analysis of the facts alleged as applied to each and every plaintiff, the federal forum in a case such as the one before the Court will do little to alleviate this burden.

One reading of cases predating *National Private Truck Council* may suggest that the multiplicity of suits rationale applies generally to all challenges to state taxes. *See, e.g., State Tax Comm'n v. Union Carbide Corp.,* 386 F.Supp. 250, 254 (D.Idaho 1974), citing *Matthews,* 284 U.S. at 529–30, 52 S.Ct. 217 (stating that the federal courts may "entertain an action otherwise within § 1341 if to do so would prevent a multiplicity of suits."); *Matthews,* 284 U.S. at 529–30, 52 S.Ct. 217 (finding that "the jurisdiction of equity to avoid multiplicity of suits at law is restricted to cases where there would otherwise be some necessity for the maintenance of numerous suits between the same parties, involving the same issues of law or fact."). A more accurate reading in this Court's view, however, stays attentive to the differences between

*Private Truck Council,* 515 U.S. at 583–84,

the relief sought in those cases, and the action for damages or a refund Plaintiffs pursue in the instant case. In *State Tax Comm'n,* 386 F.Supp. at 254, for example, the plaintiff sought a judgment declaring a multi-state tax compact unconstitutional. The merits of *Matthews* dealt with an action seeking to enjoin Mississippi from collecting a tax. *Matthews,* 284 U.S. at 522–23, 52 S.Ct. 217. Both cases involved claims for declaratory or injunctive relief, and both thus remain consistent with the Supreme Court's recent pronouncement in *National Private Truck Council* that the "multiplicity" exception applies only in tax cases where plaintiffs seek those types of equitable relief that would interfere with the states' current or ongoing collection of revenue.

## III. CONCLUSION

To the extent that the District of Columbia provides adequate remedies through which plaintiffs may challenge the legality of the contested taxes without losing their right ultimately to seek judicial review of their federal rights, the Federal Tax Injunction Act bars this Court from exercising jurisdiction over this case. Plaintiffs' challenges to the convention center tax fall squarely within the parameters of the FTIA. Because this is not a case in which Plaintiffs ask this Court to issue a declaratory judgment or to enjoin the continued collection of the tax, the Court cannot exercise jurisdiction under the "multiplicity of suits" rationale. Moreover, Plaintiffs' § 1983 claims fail to offset the FTIA's mandate that this case be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction—despite Plaintiffs' reliance upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). While plaintiffs also request supplemental jurisdiction over the claims they advance under District law pursuant to 28 U.S.C. § 1367, the absence of federal subject matter jurisdiction precludes a consideration of these claims as well.

115 S.Ct. 2351.

An order accompanies this memorandum opinion.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is, this 12 day of August, 1999, hereby

**ORDERED** that Defendant Washington Convention Center Authority's Motion to Dismiss and for Judgment on the Pleadings [# 5] is **GRANTED;** and it is further

**ORDERED** that Defendant District of Columbia's Motion to Dismiss and for Judgment on the Pleadings [# 7] is **GRANTED;** and it is further

**ORDERED** that this case is **DIS-MISSED** in its entirety for lack of subject matter jurisdiction.

**SO ORDERED.**